UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

GLENN D. ODOM, II                                                                          PLAINTIFF

v.                                                            CIVIL ACTION NO. 5:13CV-P29-R

DR. STEVE HILAND *et al.*                                                                DEFENDANTS

## MEMORANDUM OPINION

Plaintiff Glenn D. Odom, II, filed the instant *pro se* 28 U.S.C. § 1983 action proceeding *in forma pauperis*. This matter is before the Court on initial review pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). Upon review, the Court will dismiss the action.

## I.

Plaintiff is an inmate at the Kentucky State Penitentiary (KSP). He sues the following KSP personnel: Dr. Steve Hiland; John Wood, a nurse supervisor; Terri Jones, a registered nurse; Duke Pettit, the Deputy Warden of Programs; Skyla Grief, the "Grievance Coordinator/Program Director/Chaplin/Unit Administrator"; Randy White, Warden; and Bob Wilkerson, ARPN. He sues Defendants Hiland, Wood, and Wilkerson in their individual and official capacities; Defendants Jones and Grief in their individual capacities only; and Defendants Pettit and White in their official capacities only.

Plaintiff alleges that he filed a medical request on November 19, 2012, to be pulled out of his segregation cell for an examination of his "fractured finger (damaged ligament)" by Defendant Hiland. The response directed him to stop the doctor on his segregation round. He later attempted to stop Defendant Wilkerson but Wilkerson "refused to pull plaintiff out for an examination and carelessly stated 'its arthritis' as [he] rudely walked away." Plaintiff again

requested the finger to be examined on December 1, 2012. On December 20, 2012, he again stopped Defendants Hiland and Wilkerson to examine his finger. They "asked plaintiff when did the fracture occur? When plaintiff stated 'it was beat with a master lock in Feb. 2011' Dr. Hiland clearly laughed at plaintiff loudly and rudely, then APRN Wilkerson joined in the laughter as they walked off."

Plaintiff states that he filed a grievance to which Defendant Wood responded "Dr. looked at finger [through the cell door - solid steel] . . . ." (Brackets and ellipses by Plaintiff.) Plaintiff states that he appealed the grievance response but that Defendant Grief "trashed the grievance." Plaintiff inquired about the grievance appeal numerous times, but Defendant Grief responded that no grievance had been received regarding Plaintiff's finger, although Plaintiff copied the appeal and mailed it. Plaintiff complained to the Warden and Ombudsman about missing grievance appeals, and the Ombudsman responded that no grievance appeal had been received. Plaintiff further states that Defendant Grief "kept plaintiff on grievance restriction since 2011 for absolutely no logic reason other then to obstruct litigation."

Plaintiff states that Defendants Hiland and Wood have "allowed inmates to die with their 'pull no seg. inmates out for examinations' policy." He states that Defendant Hiland is allowed to do as he pleases and "has the most prior bad acts out of all M.D.'s in the Commonwealth of Kentucky." He states that his finger "obviously needs surgery." He has requested "to pay for a private exam from a private physician but Dep. Warden Duke Pettit and medical defendants has given plaintiff the opportunity to use 'the prison's' private doctor." He has requested "to pay, in advance, all expenses to receive an exam from a hand/bone specialist with an x-ray machine on site as this prison does not have one." He states that he is "afraid" of KSP's private doctor.

Plaintiff also states that Defendants Wood and Hiland no longer allow segregation inmates to receive Tylenol, Tums, aspirin, or any over-the-counter medications. He states that Defendants Wilkerson and Hiland are refusing Plaintiff a "much needed blood test." He states, "Strangely, seg. inmates must receive blood pressure checks and be weighed. If they refuse the cell extraction team is activated and the inmate is 'stripped-out.'" He states that Defendants Hiland and Wilkerson "also switch up their 'seg round' days and sneak through at 5:30 am without announcing 'Doctor on the walk.'" He "has continuously begged for examinations for all seg. inmates when a 'serious medical need' is addressed. All defendants refuse to treat seg. inmates like a human being."

As relief, Plaintiff seeks compensatory and punitive damages and injunctive and declaratory relief.

Plaintiff attaches numerous exhibits to his complaint. The attachments show that the injury to Plaintiff's finger occurred on February 11, 2011, while he was incarcerated in Indiana. His attachments also show that at the time of the injury he received two x-rays and treatment. Plaintiff's attachments also include a progress note signed by Registered Nurse Terri Jones stating, "MD LOOKED AT FINGER. NO NEW ORDERS FROM MD." To the extent Plaintiff attaches grievances and other documents concerning issues not alleged in the complaint, the Court notes that Plaintiff has filed other lawsuits in this Court concerning other medical conditions and issues. The Court does not consider any issues not raised in the complaint to be part of the instant action.

**II.**

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2); *McGore*, 114 F.3d at 604.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent'

4

with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted). And this Court is not required to create a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.

**A. Official-capacity claims for damages**

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Because all of the Defendants are employees or officers of the Commonwealth of Kentucky, the claims brought against them in their official capacities are deemed claims against the Commonwealth of Kentucky. *See Kentucky v. Graham*, 473 U.S. at 166. State officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, because Plaintiff seeks money damages from state officers or employees in their official capacities, he fails to allege cognizable claims under § 1983. Additionally, the Eleventh Amendment acts as a bar to claims for monetary damages against these Defendants in their official capacities. *Kentucky v. Graham*, 473 U.S. at 169. Therefore, Plaintiff's official-capacity claims against Defendants Hiland, Wood, Wilkerson, Pettit, and White will be dismissed for failure to state a claim upon which

5

relief can be granted and for seeking monetary relief from Defendants who are immune from such relief.

B.     **Grievance handling**

The only allegations against Defendants Grief and White concern the handling of Plaintiff's grievances and grievance appeals. However, there is "no constitutionally protected due process interest in unfettered access to a prison grievance procedure." *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002). If the prison provides a grievance process, violations of its procedures do not rise to the level of a federal constitutional right. *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986). "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003). Therefore, Plaintiff does not state a claim under § 1983 concerning the handling of his grievances or appeals, and his claims against Defendants Grief and White (to the extent Plaintiff seeks injunctive relief regarding this claim) will be dismissed.

C.     **Defendant Jones**

Plaintiff's only statement in the complaint concerning the actions of Defendant Jones is in his prayer for relief, where he states that he requests the Court to award injunctive relief in the form of "Prohibit Terri Jones from threatening disciplinary if an inmate expresses medical concerns." Threats of discipline are not sufficient to state a violation of the Eighth Amendment's cruel and unusual punishments clause. *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Searcy v. Gardner*, No. 3:07-0361, 2008 U.S. Dist. LEXIS 10312, at *4

(M.D. Tenn. Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats, abusive language, racial slurs, or verbal harassment by prison officials."). Therefore, Plaintiff's claim against Defendant Jones will be dismissed for failure to state a claim upon which relief may be granted.

D. **Denial of medical treatment**

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). In order for a claim to rise to the level of an Eighth Amendment violation, "a prison official must know of and disregard an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837-38. Therefore, to prove a prison official is liable under the Eighth Amendment for denial of medical treatment, the prisoner must first demonstrate the existence of a "sufficiently serious" medical need. *Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005). The prisoner must also demonstrate that the prison official subjectively possessed "'a sufficiently culpable state of mind in denying medical care.'" *Id.* (quoting *Farmer*, 511 U.S. at 834).

The objective component of an Eighth Amendment deliberate-indifference claim requires the existence of a sufficiently serious medical need. *Turner v. City of Taylor*, 412 F.3d 629, 646 (6th Cir. 2005). The objective component is governed by "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 9 (citations omitted). It is unclear whether Plaintiff's injured finger would satisfy the standard for a sufficiently serious medical need.

7

However, the Court need not determine this issue on initial review. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). A court generally will not find deliberate indifference when some level of medical care has been offered to the inmate. *Christy v. Robinson*, 216 F. Supp. 2d 398, 413-14 (D.N.J. 2002). Mere disagreement over medical treatment cannot give rise to a constitutional claim of deliberate indifference. *Durham v. Nu'Man*, 97 F.3d 862, 869 (6th Cir. 1996). Thus, a difference in medical judgment between an inmate and prison medical personnel regarding the appropriate diagnosis or treatment is not enough to state a deliberate-indifference claim. *Ward v. Smith*, No. 95-6666, 1996 U.S. App. LEXIS 28322, at *2 (6th Cir. Oct. 29, 1996). In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court stated: "the question whether an X-ray -- or additional diagnostic techniques or forms of treatment -- is indicated is a classic example of a matter for medical judgment. A medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment." *Id*. at 107.

Based on Plaintiff's own assertions and attachments to the complaint, he received two x-rays and treatment at the time of his injury and shortly thereafter while incarcerated in Indiana. He was not referred to a hand specialist or recommended for surgery at that time. Moreover, according to Plaintiff's allegations and attachments to the complaint, medical staff at KSP "looked at" his finger, inquired when he received the injury, observed that it was arthritis, and did not find treatment necessary. While Plaintiff contends that he should be sent to a hand specialist and receive surgery, such disagreement constitutes a dispute over the adequacy of treatment, which does not give rise to an Eighth Amendment deliberate-indifference claim.

8

*Westlake v. Lucas*, 537 F.2d at 860 n.5. Moreover, Plaintiff states that KSP officials have given him the opportunity to see the prison's private doctor, but he wants to see an outside doctor of his own choosing. Prisoners are not entitled to "unqualified access to health care." *Hudson v. McMillian*, 503 U.S. at 8. While Plaintiff may disagree with the treatment offered, such disagreement does not amount to a constitutional claim.

In addition, Plaintiff complains that segregation inmates are no longer being allowed to receive Tylenol, Tums, and other over-the-counter drugs, he has been refused a blood test, segregation inmates are required to receive blood pressure checks and be weighed, and Defendants Hiland and Wilkerson do not announce themselves when they make rounds in segregation. These claims fail because Plaintiff does not state a sufficiently serious medical need associated with these conditions or what injury he may have suffered due to these conditions. *Horn by Parks v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 659 (6th Cir. 1994) (finding that "a violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury"); *see also Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 (1986). Moreover, to the extent he seeks to bring any claims on behalf of other prisoners in segregation, Plaintiff does not have standing to bring a claim on another's behalf. *See, e.g.*, *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) ("*pro se*" means to appear for one's self; thus, one person may not appear on another person's behalf in the other's cause).

Accordingly, all claims against Defendants Hiland, Wood, Pettit, and Wilkerson concerning his medical treatment will be dismissed for failure to state claim upon which relief may be granted.

### E. Spoiled milk

Finally, Plaintiff makes a reference in the complaint to a statement by the non-defendant Ombudsman stating that there was "no record of spoiled milk issues on file from you." Plaintiff includes in his attachments copies of grievances he filed concerning a one-time incident when he was served spoiled milk and the guard did not replace his food tray. While it is not clear whether Plaintiff is bringing a claim concerning the spoiled milk, a one-time incident of being served spoiled milk or one-time denial of a meal is not sufficient to give rise to an Eighth Amendment claim. *Beene v. Rasseki*, No. 3:10-0285, 2010 U.S. Dist. LEXIS 52379, *5, 20 (M.D. Tenn. May 27, 2010) (prisoner's claim that he was not allowed to trade spoiled milk for fresh milk not sufficient to state Eighth Amendment claim); *see also Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (holding that a prisoner served only one meal per day, over fifteen days, that provided sufficient nutrition did not violate the Eighth Amendment); *Waring v. Meachum*, 175 F. Supp. 2d 230, 240-41 (D. Conn. 2001) (finding no Eighth Amendment claim where inmate missed two meals and there was no indication that future meals were missed). Therefore, any claim based on being served spoiled milk will be dismissed for failure to state a claim.

For the foregoing reasons, the Court will dismiss this action by separate Order.

Date:

cc: Plaintiff, *pro se*
4413.010

10